Spencer C. Skeen, CA Bar No. 182216
spencer.skeen@ogletree.com
Nikolas T. Djordjevski, CA Bar No. 294728
nikolas.djordjevski@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
4370 La Jolla Village Drive, Suite 990
San Diego, CA  92122
Telephone:   858.652.3100
Facsimile:    858.652.3101

Attorneys for Defendants TRADEMARK CONSTRUCTION CO., INC., and TRADEMARK CONSTRUCTION CO., INC., WHICH WILL DO BUSINESS IN CALIFORNIA AS J.M.W. TRUSS AND COMPONENTS

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF SAN DIEGO

| | |
|---|---|
| JOSE GARCIA, an individual, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TRADEMARK CONSTRUCTION CO., INC., an Arizona corporation; TRADEMARK CONSTRUCTION CO., INC., WHICH WILL DO BUSINESS IN CALIFORNIA AS J.M.W. TRUSS AND COMPONENTS, an Arizona corporation; and DOES 1 through 50, inclusive<br><br>Defendant. | Case No. **'18CV1214 JLS  WVG**<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT BY DEFENDANTS**<br><br>[28 U.S.C. § 1332 (d) (Class Action Fairness Act)]<br><br>[Filed concurrently with Civil Cover Sheet; Notice of Parties with Financial Interest; and Declarations of Richard D. Wilson and Nikolas T. Djordjevski] |

Defendants Trademark Construction Co., Inc. ("Trademark") and Trademark Construction Co., Inc. which will do business in California as J.M.W. Truss and Components ("JMW") (collectively, "Defendants") remove this action from the San Diego County Superior Court to the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1332(d) (the Class Action Fairness Act ["CAFA"]) and 1446 because (1) Plaintiff and other members of the putative class are citizens of a State different from any defendant; (2) the number of members of all proposed plaintiff classes in the aggregate is over 100; and (3) the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs.

The above facts were true when Plaintiff filed his Complaint and remain true as of the date of filing this Notice. As set forth in more detail below, all CAFA requirements are satisfied.

## I. THE STATE COURT ACTION

1. Plaintiff filed his Complaint on April 2, 2018 in the San Diego County Superior Court ("Action"). The Action was assigned Case No. 37-2018-00016180-CU-OE-CTL. (Declaration of Nikolas T. Djordjevski ["Djordjevski Decl."], ¶¶ 2 and 5; Ex. 1, Complaint.)

2. On April 19, 2018 Plaintiff sent a Notice and Acknowledgement of Receipt to counsel for Defendants. Defendants then filed their Answer to Plaintiff's Complaint in San Diego County Superior Court on June 8, 2018. (Djordjevski Decl., ¶¶ 3-4.)

## II. REMOVAL IS TIMELY

3. Under 28 U.S.C. § 1446(b) and Federal Rule of Civil Procedure 6(a), Defendants' deadline to remove is June 8, 2018. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 US 344, 354 (1999). This Notice of Removal is timely.

///
///

### III. REMOVAL IS PROPER UNDER CAFA

4. Removal under CAFA is proper given Plaintiff's allegations and claims. The Complaint asserts: (1) failure to pay minimum wages; (2) failure to pay wages and overtime under Cal. Labor Code § 510; (3) meal period liability under Cal. Labor Code § 226.7; (4) rest period liability under Cal. Labor Code § 226.7; (5) failure to reimburse necessary business expenditures under Cal. Labor Code § 2802; (6) violation of Cal. Labor Code § 226(a); (7) violation of Cal. Labor Code § 221; (8) violation of Cal. Labor Code § 203; and (9) violation of Cal. Business & Professions Code § 17200 *et seq.* (Ex. 1, Complaint.)

5. CAFA grants district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant; the number of members of all proposed plaintiff classes in the aggregate is over 100; and where the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions under 28 U.S.C. § 1446.

6. This Court has original jurisdiction over the Action under CAFA because it is a civil case filed as a class action wherein at least one member of the putative class of plaintiffs is a citizen of a state different from Defendants, the number of members in Plaintiff's proposed classes in the aggregate is over 100, and the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

### A. CAFA's Diversity of Citizenship Requirement is Satisfied

7. CAFA's diversity requirement is satisfied when at least one plaintiff is a citizen of a state in which none of the defendants are citizens. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a), (b); *Rodgers v. Central Locating Service, Ltd.*, 2006 U.S. Dist. LEXIS 6255, *7-*8.

8. At all relevant times, Plaintiff has been a resident of California. (Ex. 1, Complaint, ¶ 2.)

9. Plaintiff seeks to represent a class of "[a]ll individuals employed by Defendants…who have been employed as non-exempt, hourly construction employees at Defendants' work sites within the State of California." (Ex. 1, Complaint, ¶ 30.) Some such employees are residents and citizens of Mexico who work in the United States in California pursuant to work visas. (Declaration of Richard D. Wilson ["Wilson Decl."], ¶ 3.)

10. Under 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any state by which it has been incorporated and the state where it has its principal place of business." The Supreme Court has established the proper test for determining a corporation's principal place of business for purposes of diversity jurisdiction. *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010). The Court held that the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* at p. 1184. The Court further clarified that the principal place of business was the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control and coordination." *Id.*

11. Defendants are corporate entities organized under the laws of the State of Arizona with their principal places of business in Yuma, Arizona. Their executive management has directed, controlled, and coordinated its activities from there. Defendants have not been organized under the laws of California nor had their principal place of business there. (Wilson Decl., ¶ 2.) Although JMW operates a business that includes construction and framing services in California, its primary business is the engineering, design, manufacture, and sale of wood truss components for building and construction. All such business is performed in Yuma, Arizona. (Wilson Decl., ¶ 4.)

12. Minimal diversity is established because, at all relevant times, Plaintiff has been a citizen of California and Defendants have not. In addition, there are putative class members who are residents and citizens of Mexico while Defendants

are not. Removal is proper under 28 U.S.C. § 1332(d); *Serrano v. 180 Connect Inc.*, 478 F.3d 1018, 1019 (9th Cir. 2007).

### B.   CAFA's Class Size Requirement is Satisfied

13.   Plaintiff brings this Action on behalf of himself and "[a]ll individuals employed by Defendants at any time during the period of four (4) years prior to the filing of [the Action] and ending on a date as determined by the Court…, and who have been employed as non-exempt, hourly construction employees at Defendants' worksites within the State of California." (Ex.1, Complaint, ¶ 30.) Plaintiff also seeks to represent several additional subclasses. (*Id.*, ¶ 30(a) – (i).)

14.   Plaintiff alleges that here are "hundreds of Employees who satisfy the Class definition within the State of California." (Ex. 1, Complaint, ¶ 34.) He further alleges that "employee turnover during the relevant time period increases this number substantially" and that "Defendants' employment records will provide information as to the number…of Class members." (*Id.* at ¶ 35.)

15.   From April 2, 2014 to the present, JMW has employed, in the aggregate, more than 100 putative class members. (Wilson Decl., ¶ 5.)[1]

### C.   CAFA's Amount in Controversy Requirement is Satisfied

16.   CAFA authorizes the removal of class action cases in which the amount in controversy for all class members exceeds $5,000,000. 28 U.S.C. § 1332(d).

17.   The "District Court [must] determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [a plaintiff's] proposed class and determine whether the resulting sum exceeds [$5,000,000]." *Standard Fire Insurance Co. v. Knowles*, 133 S.Ct. 1345, 1348 (2013). For purposes of removal, "[t]he court accepts the allegations in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." *Henry v. Cent. Freight Lines, Inc.*, 692 F. App'x 806, 807 (9th Cir.

---

[1] In alleging the class size for CAFA removal, Defendants do not concede that Plaintiff's allegations in the Complaint are accurate.

2017) (citing *Campbell v. Vitran Express, Inc.*, 471 F. App'x. 646, 648 (9th Cir. 2012)).

18. Among other things, Plaintiff seeks the recovery of unpaid minimum wage and overtime, meal and rest period penalties, wage statement penalties, waiting time penalties, and attorneys' fees on behalf of himself and the putative class. (Ex. 1, p. 35, Relief Requested.) Taking Plaintiff's allegations at face value (discussed in detail below) the Complaint satisfies the $5,000,000 threshold for CAFA removal. *See* 28 U.S.C. § 1332(d).[2]

### 1.  Relevant Data

19. From April 2, 2017 to the present, JMW issued at least 4,829 wage statements to at least 540 putative class members. (Wilson Decl., ¶ 6.)

20. From April 2, 2015 to the present, at least 228 putative class members separated from their employment with JMW. These putative class members earned an average hourly rate of $26.35. (Wilson Decl., ¶ 7.)

21. From April 2, 2014 to the present, JMW employed at least 746 employees who worked at least 13,678 workweeks, or 68,390 workdays. These employees earned an average hourly rate of $28.52, with an average overtime premium rate of $42.78. (Wilson Decl., ¶ 8.)

### 2.  Wage Statement Penalties

22. Plaintiff seeks statutory penalties for inaccurate wage statements under California Labor Code § 226 on behalf of putative class members. Such alleged inaccuracies include facial violations. (Ex. 1, Complaint, ¶¶ 24, 26, 84-90.)

///

///

---

[2] In alleging the amount in controversy for CAFA removal, Defendants do not concede in any way that Plaintiff's allegations in the Complaint are accurate, or that Plaintiff is entitled to any of the monetary relief requested in the Complaint. Defendants do not concede that any or all putative class members are entitled to any recovery, or are appropriately included in the Action.

23. A one-year statutory period applies to Plaintiff's claim for wage statement penalties. Cal. Code Civ. Proc. § 340(a); *Falk v. Children's Hospital Los Angeles*, 237 Cal.App.4th 1454, 1469 (2015).

24. Labor Code § 226(e) provides for the greater of all actual damages or $50 for the initial pay period in which a violation occurred and $100 for each subsequent pay period.

25. As noted above, from April 2, 2017 to the present, JMW issued at least 4,829 wage statements to at least 540 putative class members. (Wilson Decl. ¶ 7.) Therefore, based on Plaintiff's allegations, the amount in controversy for wage statement penalties is **$455,900** (540 wage statements x $50 = $27,000; 4,289 wage statements x $100 = $428,900 [$27,000 + $428,900 = $455,900]). JMW issues wage statements to employees every week, along with their paychecks. (Wilson Decl., ¶ 6.)

### 3. Waiting Time Penalties

26. Plaintiff seeks waiting time penalties under California Labor Code § 203 on behalf of all putative class members. (Ex. 1**,** Complaint, ¶¶ 30(h), 95-100.)

27. California Labor Code § 203 provides that "[i]f an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

28. A three-year statutory period applies to Plaintiff's claim for waiting time penalties. *Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1398 (2010) (waiting-time penalty claims are governed by three-year statute of limitations for statutory violations under Cal. Code Civ. Proc. § 338(a).)

29. From April 2, 2015 to the present, at least 228 putative class members separated from their employment with JMW. These putative class members earned an average hourly rate of $26.35, with an average daily rate of pay of $210.80.

(Wilson Decl., ¶ 7.) Therefore, based on Plaintiff's allegations, the amount in controversy for waiting time penalties is **$1,441,872** ($26.35 x 8 hours x 30 days x 228 putative class members = $1,441,872).

### 4. Unpaid Overtime and Minimum Wages

30. Plaintiff also seeks unpaid overtime under California Labor Code § 510 on behalf of putative class members. (Ex. 1, Complaint, ¶¶ 58-65.) He alleges that he and putative class members were required to work at least 20 minutes off-the-clock per day, in excess of eight hours. (Ex. 1, Complaint, ¶¶ 11-12.) He also seeks liquidated damages in an amount equal to the unpaid minimum wages resulting from off-the-clock work under Section 1194.2 (*Id.,* ¶¶ 28, 49, 52.)

31. California Labor Code § 510 provides, *inter alia*, that any work in excess of eight hours in a workday or 40 hours in a workweek shall be compensated at one and one-half times an employee's regular rate of pay.

32. A four year statutory period applies to Plaintiff's claims for overtime and minimum wages/liquidated damages because such damages are recoverable as restitution under the Business & Professions Code. *Cortez v. Purolator Air Filtration Prods.*, 23 Cal.4th 163 (2000); Bus & Prof. Code § 17208.

33. As noted above, from April 2, 2014 to the present, putative class members earned an average hourly rate of $28.52, with an average overtime premium rate of $42.78. (Wilson Decl., ¶ 8.) Based on Plaintiff's allegations, the amount in controversy for unpaid overtime wages is **$965,488.99** ([$28.52 x 1.5 = $42.78] x 0.33 hours [20 minutes] x 68,390 work days = $965,488.99). In addition, the amount in controversy for liquidated damages is **$214,402.65** ($9.50 [average minimum wage during the statutory period] x 0.33 [20 minutes] x 68,390 days = $214,402.65).

34. An assumption of 20 minutes per day of unpaid overtime is reasonable given Plaintiff's allegations, which state that putative class members worked "at least" 20 minutes of off-the-clock per day. Moreover, Plaintiff alleges Defendants

had a "consistent" policy of not paying for all hours worked. (Ex. 1, Complaint, ¶¶ 59-60.)

### 5.   Meal and Rest Period Premium Pay

35.   Under California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200 et seq., on behalf of himself and all putative class members in California from April 2, 2014 to the present, Plaintiff seeks restitution in the form of one additional hour of premium pay for each workday in which Defendants failed to provide a timely, duty-free meal period, or failed to provide a timely, duty-free second meal period. (Ex. 1, Complaint, ¶¶ 67-71, 109.) Plaintiff contends that the failure to provide lawful meal periods in violation of California Labor Code §§ 226.7 and 512 constitutes an unlawful business practice under the UCL. (*Id.*, ¶ 108.)

36.   The statute of limitations for a claim under the UCL is four years. Cal. Bus. & Prof. Code § 17208. Under the UCL, an individual may recover unlawfully withheld wages as a form of restitution. *Cortez,* 23 Cal.4th at 173. A plaintiff may seek to recover meal or rest period premium pay as a form of restitution under the UCL, under the theory that premium pay constitutes wages under the UCL. *Murphy v. Kenneth Cole Prods., Inc*., 40 Cal.4th 1094, 1114 (2007).

37.   Plaintiff alleges that he and other putative class members were "required to perform work for more than five (5) hours during a shift, but were often required to do so without receiving all required timely and uninterrupted meal periods," and that such meal periods were scheduled late "as a matter of uniform company policy." (Ex. 1, Complaint, ¶ 17.) Plaintiff also alleges that he and the putative class were also "never provided" with a second meal period despite often working in shifts of over ten hours. (*Id.*) He alleges that Defendants had a policy and practice of sending Plaintiff and other putative class members to meal and rest periods at the same time, thus often making the meal and rest periods both untimely. (*Id.*) Plaintiff further alleges that Defendants failed to pay him and the class members "premium pay" of

34386677_1

8                     Case No.
NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

one hour of wages at each employee's hourly rate of pay for each non-compliant meal or rest period. (*Id.* at ¶ 18.)

38. From April 2, 2014, JMW employed at least 746 employees who worked at least 13,678 workweeks and earned an average hourly rate of pay of $28.52. (Wilson Decl. ¶ 8.)

39. A removing defendant may employ reasonable assumptions based on the complaint to determine the amount in controversy. With a conservative estimate of 2.5 meal and rest break violations per workweek, the total amount in controversy for meal and rest period premium pay is equal to **$1,950,482.80** ([13,678 workweeks x 2.5 (meal break violations per week) x $28.52 = $975,241.40] + [13,678 workweeks x 2.5 (rest period violations per week) x $28.52 = $975,241.40]).

40. An assumed violation rate of 50% is reasonable in estimating the amount in controversy for alleged meal and rest period violations. *See, e.g., Oda v. Gucci Am., Inc.*, No. 2:14-CV-07469-SVW, 2015 WL 93335, at *4-5 (C.D. Cal. Jan. 7, 2015) (upholding assumed 50% violation rate [or 2.5 violations per week] on both meal *and* rest period claims where plaintiffs alleged that "Plaintiffs and the class members *sometimes* did not receive all of their meal periods in a lawful fashion") (emphasis supplied); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (assuming 100% rest period violation rate where plaintiff alleged defendant "'adopted and maintained uniform policies, practices and procedures' that caused the purported violations of California's rest period law."); *Duberry v. J. Crew Grp., Inc.*, No. 214CV08810SVWMRW, 2015 WL 4575018, at *1, 6 (C.D. Cal. July 28, 2015) (applying a 70% violation rate but finding allegations were "sufficient to ground an assumed 100% violation rate" where Plaintiff alleged defendant engaged in a "uniform policy and systematic scheme of wage abuse against their hourly-paid or non-exempt employees," which included a failure to pay for "missed meal periods and rest breaks in violation of California law").

///

### 6. Attorneys' Fees

41. Based on the above claims, Defendants have demonstrated that $5,028,146.44 is in controversy based on the allegations in the Complaint.[3]

42. Plaintiff additionally seeks attorney fees. (Ex. 1, Complaint, Relief Requested, ¶ 16.) In the Ninth Circuit, 25% of the total recovery is the "benchmark level" for reasonable attorney fees in class action cases. *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013). Using this 25% benchmark, courts have included attorney fees for 25% of the total recovery in determining the amount in controversy under CAFA. *Id.* (contemplating inclusion of 25% of total recovery in attorney fees under CAFA); *Rwomwijhu v. SMX, LLC*, No. CV1608105ABPJWX, 2017 WL 1243131, at *6 (C.D. Cal. Mar. 3, 2017) (including fees in calculation, noting that "courts in the Ninth Circuit, including this one, have allowed an estimated fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA"); *Sanchez v. Russell Sigler, Inc.*, No. CV1501350ABPLAX, 2015 WL 12765359, at *7 (C.D. Cal. Apr. 28, 2015) (same).

43. Assuming an award of attorneys' fees in the benchmark amount of 25% of the total recovery, the amount in controversy for such fees is **$1,257,036.61** ($5,028,146.44 x 0.25).

### 7. Summary

44. Even excluding Plaintiff's claims for unreimbursed expenses under Labor Code Section 2802, unlawful deductions of wages under Section 221, and attorneys' fees, the Complaint satisfies the $5 million threshold for purposes of removal under CAFA. With benchmark attorneys' fees added, the amount in controversy exceeds $6 million ($5,028,146.44 in alleged damages and penalties + $1,257,036.61 = $6,285,183.05.) Even the most conservative of estimated recoveries

---

[3] $455,900 in wage statement penalties + $1,441,872 in waiting time penalties + $965,488.99 in unpaid overtime + $214,402.65 in unpaid minimum wages/liquidated damages + $1,950,482.80 in meal and rest period penalties = $5,028,146.44.

34386677_1

10   Case No.
NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

for Plaintiff's additional claims pushes the amount in controversy well over the $5 million threshold.

## IV. **VENUE IS PROPER IN THIS COURT**

45. Under 28 U.S.C. § 1441(a), this Notice of Removal is filed in the district court of the United States in which the Action is pending. The Superior Court for the County of San Diego is within the Southern District of California. (28 U.S.C. § 84(d).) Therefore, venue is proper in this Court because it is the district and division embracing the place where the Action is pending. (28 U.S.C. § 1441(a).)

46. In accordance with 28 U.S.C. §1446(a), this Notice of Removal is accompanied by the Declarations of Richard D. Wilson and Nikolas T. Djordjevski, and Exhibits 1 to 5, which constitute a copy of all processes, pleadings, and orders provided to Defendants.

47. As required by 28 U.S.C. §1446(b) and Federal Rule of Civil Procedure 6(a), this Notice of Removal was filed timely as Plaintiff provided Notices and Acknowledgements of Receipt on April 19, 2018. (Djordjevski Dec. ¶ 3.)

48. As required by 28 U.S.C. §1446(d), Defendants provided Notice of Removal to Plaintiff through his attorneys of record.

49. As required by 28 U.S.C. §1446(d), a copy of the original Notice of Removal will be filed with the Superior Court of the State of California, for the County of San Diego.

50. If this Court has a question regarding the propriety of this Notice of Removal, Defendants request it issue an Order to Show Cause so it may have an opportunity to more fully brief the grounds for this removal.

///
///
///
///
///

## V. **CONCLUSION**

For the foregoing reasons, Defendants remove the above-entitled action to the United States District Court for the Southern District of California.

DATED: June 8, 2018

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: s/*Spencer C. Skeen*
Spencer C. Skeen
Nikolas T. Djordjevski

Attorneys for Defendants TRADEMARK CONSTRUCTION CO., INC., and TRADEMARK CONSTRUCTION CO., INC., WHICH WILL DO BUSINESS IN CALIFORNIA AS J.M.W. TRUSS AND COMPONENTS

34386677.1