UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE GARCIA, an individual, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRADEMARK CONSTRUCTION CO., INC., an Arizona corporation; TRADEMARK CONSTRUCTION CO., INC., which will do business in California as J.M.W. TRUSS & COMPONENTS, an Arizona corporation; and DOES 1 through 50 inclusive,<br><br>Defendants. | Case No.: 18-CV-1214 JLS (WVG)<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>(ECF No. 6) |

Presently before the Court is the Motion to Compel Arbitration filed by Defendants Trademark Construction Co. and Trademark Construction Co., which will do business in California as J.M.W. Truss & Components. ("Mot.," ECF No. 6). Also before the Court is Plaintiff Jose Garcia's Opposition to ("Opp'n," ECF No. 10) and Defendants' Reply in Support of ("Reply," ECF No. 12) the Motion. After reviewing the parties' arguments, the evidence, and the law, the Court rules as follows.

///

# BACKGROUND

## I. Relevant Facts Regarding Plaintiff's Employment

Plaintiff worked as a construction worker, carpenter, and safety coordinator for Defendants from March through August of 2017, at a work site in Hollywood, California. Declaration of Jose Garcia ("Garcia Decl.") ¶¶ 2, 7, ECF No. 10-1. During Plaintiff's in-processing on his first day of work, Defendants required Plaintiff to complete and sign several documents, including: "an acknowledgement of Defendant Trademark Construction's handbook," *id.* ¶ 7; an Employee Acknowledgment and Arbitration Agreement with Trademark Construction (the "Trademark Arbitration Agreement"), *id.*; and an application to join the Southwest Regional Council of Carpenters of the United Brotherhood of Carpenters and Joiners of America (the "Union"). Mot. at 6 (citing Declaration of Richard Wilson ("Wilson Decl.") ¶ 1, ECF No. 6-4). Plaintiff also "believe[s he] was provided a copy of the [collective bargaining agreement] for the Union[] when [he] . . . fill[ed] out the Union application during [his] in-processing." Garcia Decl. ¶ 8; *see also* First Amended Complaint ("FAC") ¶ 9, ECF No. 6-8 (stating Plaintiff was "provided with a Memorandum of Agreement and a Residential Master Labor Agreement from the Union"). Several months later, Plaintiff received a Union card in the mail, *see* FAC ¶ 9, from the Carpenters International Training Fund; the card included his name and the number U-7552-7631. Garcia Decl. ¶ 8.

## II. The Collective Bargaining Agreement Details

Defendants have been members of the Residential Contractors Association ("RCA") since April 2007. Mot. at 6 (citing Wilson Decl. ¶ 1). The Union and the RCA entered into a collective bargaining agreement entitled the "Residential Master Labor Agreement" (the "Labor Agreement"), which became effective on January 1, 2015. Mot. at 7 (citing Wilson Decl. ¶ 3; Wilson Decl., Ex. 1, ECF No. 6-5). The RCA and the Union later agreed to a Memorandum of Understanding ("MOU") on June 15, 2017, *id.* (citing Wilson Decl. ¶ 3; Wilson Decl., Ex. 2, ECF No. 6-6), which became effective retroactively on January 1, 2015. Reply at 6 (citing Supp. Declaration of Richard Harris ¶ 3, ECF No. 12-3).

Article X of the Labor Agreement outlines the grievance and arbitration process for any disputes. *See* Wilson Decl., Ex. 1 at 15–16. Under this section, "an RCA Contractor, the RCA, the Union or an employee of such Contractor" must submit any disputes through the grievance process outlined in Article X, Section 2 of the Labor Agreement. *Id.* at 15. "If the grievance is not resolved" through this process, "then the grievance may be taken to arbitration upon written request by the grieving party." *Id.*

The MOU adds an additional section concerning the scope and details of the arbitration outlined in the Labor Agreement. Wilson Decl., Ex. 2 at 2. The arbitration clause covers "all employee disputes concerning violations of . . . federal, state, and local law concerning wage-hour requirements, unpaid wages, payment and meal or rest periods premiums, waiting time pay, non-compliant earnings statements, and unreimbursed expenses . . . as well as any and all other claims arising under the California Labor Code." *Id.* The grievance procedure—including arbitration—is the "sole and exclusive remedy" for all such disputes. *Id.* Additionally, "[t]he arbitrator shall not have the authority to consolidate individual grievances for hearing, and does not have the authority to fashion a proceeding as a class or collective action or to award relief to a group or class of employees in one grievance or arbitration proceeding." *Id.*

Together, the Labor Agreement and the MOU (collectively, the Collective Bargaining Agreement ("CBA")) applies to "all employees employed by members of the RCA" during Plaintiff's employment and "contain[s] specific grievance procedures, including arbitration," that apply to Plaintiff's claims. *See id.*

## III. The Present Litigation

Plaintiff filed a putative wage and hour class action in San Diego County Superior Court on April 2, 2018. *See* Notice of Removal at 2, ECF No. 1. On June 5, 2018, Plaintiff filed its FAC.[1] Mot. at 9; *see also* FAC. Plaintiff alleges nine claims against Defendants

---

[1] Defendants did not receive the FAC until June 11, 2018, three days after it removed Plaintiff's original complaint. Mot. at 9. Defendants attached the FAC to their Motion and request the Court take judicial notice of the FAC. Neither party disputes that the FAC is the operative complaint. "The FAC alleges all

3

18-CV-1214 JLS (WVG)

for: "(1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) failure to reimburse necessary business expenses; (6) violation of Labor Code § 226(a) (inaccurate wage statements); (7) violation of Labor Code § 221 (deductions from wages); (8) violation of Labor Code § 203 (waiting time penalties); and (9) violation of California Business and Professions Code § 17200 et seq." Mot. at 8; *see also* Garcia Decl. at 2; *see generally* FAC. Plaintiff also seeks penalties under California's Private Attorneys General Act ("PAGA"). FAC ¶¶ 112–18.

Defendants removed the action to federal court under the Class Action Fairness Act on June 8, 2018, *id.*, and filed an answer to the complaint on the same day. *See* ECF No. 3. Defendants then filed the instant Motion requesting the Court compel arbitration.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the enforceability of arbitration agreements in contracts. *See* 9 U.S.C. §§ 1, *et seq.*; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24–26 (1991). If a suit is proceeding in federal court, the party seeking arbitration may move the district court to compel the resisting party to submit to arbitration pursuant to their private agreement to arbitrate the dispute. 9 U.S.C. § 4. The FAA reflects both a "liberal federal policy favoring arbitration agreements" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotations and citations omitted); *see also Kilgore v. Keybank, Nat'l Ass'n*, 718 F.3d 1052, 1057 (9th Cir. 2013) (en banc) ("The FAA was intended to 'overcome an anachronistic judicial hostility to agreements to arbitrate, which American courts had borrowed from English common law.'") (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 n.14 (1985)); *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) ("The [FAA] not only placed arbitration

---

the same claims as Plaintiff's original complaint, with the sole addition of a claim for penalties under [California's Private Attorneys General Act]." *Id.* Therefore, the Court considers the FAC the operative complaint and finds that judicial notice of the operative complaint is unnecessary.

agreements on equal footing with other contracts, but established a federal policy in favor of arbitration . . . and a federal common law of arbitrability which preempts state law disfavoring arbitration.").

In determining whether to compel a party to arbitration, the Court may not review the merits of the dispute; rather, the Court's role under the FAA is limited to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). If the Court finds that the answers to those questions are yes, the Court must compel arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). In determining the validity of an arbitration agreement, the Court applies state law contract principles. *Adams*, 279 F.3d at 892; *see also* 9 U.S.C. § 2. To be valid, an arbitration agreement must be in writing, but it need not be signed by the party to whom it applies as acceptance may be implied in fact. *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 233, 236 (2012). Further, "[a]n arbitration clause within a contract may be binding on a party even if the party never actually read the clause." *Id.*

## ANALYSIS

Defendants argue that the Court must compel arbitration of Plaintiff's individual claims, dismiss Plaintiff's class action claims, and stay Plaintiff's PAGA claims. Mot. at 6. According to Defendants, arbitration of Plaintiff's claims is mandatory under the FAA because "[a]t all times during his employment, Plaintiff was a member of the [Union]," *id.* (citing Wilson Decl. ¶ 3), and, as such, the CBA—which includes a grievance process that mandates arbitration for certain disputes, including the claims Plaintiff brings in this action—governs the terms of Plaintiff's employment and mandates arbitration of this dispute. Mot. at 6–7, 11; Wilson Decl. ¶ 1.

Plaintiff counters that arbitration is not appropriate because Plaintiff's Union membership status is "questionable" and, therefore, Plaintiff may not be subject to the CBA. Opp'n at 7–11; 17–18. Plaintiff also argues that the CBA should not apply because Plaintiff signed the Trademark Arbitration Agreement which supersedes the CBA. Opp'n

5

at 18. Finally, Plaintiff contends that even, if the Court finds that the CBA controls, the Court should not enforce the CBA's arbitration clause because it is "permeated with procedural and substantive unconscionability." *Id.* at 20–21.

## I. Plaintiff's Union Membership Status

The Court first addresses Plaintiff's contention that he may not have been a Union member. *See* Opp'n at 7–11, 17–18. "[W]hen a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists and, if any defense to its enforcement is raised, whether it is enforceable." *Hotels Nev. v. L.A. Pac. Ctr., Inc.*, 144 Cal. App. 4th 754, 761 (2006). In making this determination, a court "may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party." *Atlas Int'l Mktg., LLC v. Car-E Diagnostics, Inc.*, No. 5:13-CV-02664-EJD, 2014 WL 3371842, at *3 (N.D. Cal. July 9, 2014) (citation and internal quotations omitted); *see also Xinhua Holdings Ltd. v. Elec. Recyclers Int'l, Inc.*, No. 1:13-CV-1409 AWI SKO, 2013 WL 6844270, at *5 (E.D. Cal. Dec. 26, 2013) ("For purposes of deciding a motion to compel arbitration, the Court may properly consider documents outside of the pleadings.") (citation omitted). The moving party bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence. *Jones v. Jacobson*, 195 Cal. App. 4th 1, 15 (2011), *as modified* (June 1, 2011) (citing Cal. Civ. P. Code § 1281.2).

Defendants argue that the evidence shows that, at all relevant times, Plaintiff was a member of the Union. Reply at 2, 4–5. In support of their argument, Defendants submit the sworn declaration of Richard Wilson, the President and owner of the Defendants. *See* Wilson Decl. ¶ 2. Defendants also assert that Plaintiff's own pleadings and the Garcia Declaration contain evidence that Plaintiff was in fact a member of the Union. Reply at 2, 4–5. Based on this evidence, Defendants contend that union membership was a condition of Plaintiff's employment, *id.* at 4 (citing Wilson Decl. ¶ 3), that Plaintiff completed a Union application, *id.* at 5 (citing Opp'n 4:18–26, 5:1–2, 6:3–4), and that there is no evidence that Plaintiff revoked his membership. *Id.*

In rebuttal, Plaintiff submits his own sworn declaration. *See generally* Garcia Decl. Plaintiff states that he is "confused" by Defendants' assertions that he "was a member of [the] Union 'at all times during' [his] employment." *Id.* (quoting Wilson Decl. ¶ 3). Plaintiff's confusion in part stems from the fact that "he was not paid at the rates required for union workers." *Id.* ¶ 4. Plaintiff also contends that, during his in-processing, he "was told . . . the [Union] [a]pplication would not be submitted unless it was necessary for [his] assigned job." *Id.* ¶ 8. Plaintiff also states that he "received in the mail a 'Training Verification Card' from the 'Carpenters International Training Fund' with his name and the number U-7552-7631," *id.*, but that he "was made to understand from Defendants that this Training Card was not a Union card" and that he "was not yet a member of the Union." *Id.* ¶¶ 8–9. Finally, Plaintiff states that, contrary to his previous experience of being a Union member, he "never received any training from the Union after [he] began working for [Defendants]," "[n]o Union representatives ever came to [his] work site or otherwise communicated or corresponded with [him]," *id.* ¶ 11, and "[he] also never recall[ed] paying any Union dues" during his employment. *Id.* ¶ 12. Despite these inconsistencies, Plaintiff "believed that [he] should have been" a member because the contractor that hired Defendants as sub-contractors "only employed Union workers on their job sites." *Id.* ¶ 9.

The Court must agree with Defendants that the evidence strongly indicates that Plaintiff was a member of the Union. Defendants have put forward evidence that Plaintiff signed a Union application at the time of his hiring. Wilson Decl. ¶ 3; ECF No. 12-2. The evidence also shows Defendants were a member of the RCA and, as such, hired only Union workers. Wilson Decl. ¶ 3. And finally, Plaintiff received a card from the Union that seems to have had a Union number printed on it and that Plaintiff himself acknowledged was a "Union card" in his FAC. *See* FAC ¶ 9.

Important to this finding is the fact that no where in any of the pleadings or in Plaintiff's own sworn declaration does Plaintiff actually assert that he was *not* a member of the Union. *See generally* FAC; Opp'n; Garcia Decl. Instead, Plaintiff states that he was "confused" about his membership status, Garcia Decl. ¶ 13, and that his status was

"uncertain[]" and "questionable." Opp'n at 5, 9. Plaintiff's entire argument is therefore based on the hypothetical that Plaintiff may not be—not that he actually was not—a member of the Union. Moreover, Plaintiff's own pleadings contradict his claimed confusion. For example, in his FAC, Plaintiff states that he "was required by Defendants to join a Union and received a Union Card." FAC ¶ 9. This statement, made before Defendants filed their Motion to Compel, indicates no ambiguity as to his Union membership status. Finally, the fact that Plaintiff's Union membership status was easily ascertainable by Plaintiff, and yet not determined, lends no support Plaintiff's contentions. *See* Garcia Decl. ¶ 10 (stating Plaintiff verified his Union membership status after he left a previous job in 2013).

Therefore, the Court finds that, by a preponderance of the evidence, Plaintiff was a member of the Union during his employment with Defendants.

## II. The Trademark Arbitration Agreement

Plaintiff next argues that, "if there was an [a]rbitration [a]greement that applied to govern his employment, it would be the Trademark Arbitration Agreement rather than the CBA." Opp'n at 18. This is because the Trademark Arbitration Agreement "states it 'supersedes any and all prior agreements regarding these issues.'" *Id.* (citing Pl. Ex. A at 2, ECF No. 10-2). According to Plaintiff, because Plaintiff signed the Trademark Arbitration Agreement, but not the CBA, the Trademark Arbitration Agreement should supersede the CBA. *Id.*

The Court disagrees. When an individual contract conflicts with a collective bargaining agreement, the collective bargaining agreement supersedes the individual contract. *Starla Rollins v. Cmty. Hosp. of San Bernardino*, 839 F.3d 1181, 1185 (9th Cir. 2016) (citing *Espinal v. Nw. Airlines*, 90 F.3d 1452, 1458–59 (9th Cir. 1996)). Here, both the Trademark Arbitration Agreement and the CBA require Plaintiff to arbitrate his claims. The two agreements conflict, however, in that the CBA expressly waives the right to bring claims on a class-wide basis, while the Trademark Arbitration Agreement does not. *Compare* Pl. Ex. A, *with* Wilson Decl., Ex. 2 at 3. Because the agreements conflict, the

CBA supersedes the Trademark Arbitration Agreement. *See Galvan v. Hyatt Regency San Francisco Airport*, No. C 98-3429 TEH, 1998 WL 865280, at *2 (N.D. Cal. Dec. 7, 1998) ("Courts have consistently held that, in order to protect the underlying purpose of the collective bargaining scheme, individual employment contracts which are inconsistent with a CBA must be superseded by that CBA.") (citing *J.I. Case Co. v. NLRB,* 321 U.S. 332, 337 (1944)).

### III. Unconscionability

Finally, Plaintiff argues that the Court should not compel arbitration pursuant to the CBA because the CBA is both procedurally and substantively unconscionable. Opp'n at 20–26.

Section 2 of the FAA "provides that a court may strike or limit an arbitration provision on 'such grounds as exist at law or in equity for the revocation of any contract.'" *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016) (quoting 9 U.S.C. § 2). "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability" are examples of such grounds that may invalidate an otherwise enforceable arbitration agreement. *Concepcion*, 563 U.S. at 339 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

Under California law, "unconscionability has both a 'procedural' and a 'substantive' element, the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (internal quotation marks omitted) (citing *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486–87 (1982)). Procedural and substantive unconscionability "must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Id.* (emphasis in original) (quoting *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1533, *as modified* (Feb. 10, 1997)). Courts use a sliding scale in analyzing unconscionability as a whole, such that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is

unenforceable, and vice versa." *Id.* "The party asserting that a contractual provision is unconscionable bears the burden of proof." *Tompkins*, 840 F. 3d at 1023 (citing *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015).

### A. *Procedural Unconscionability*

Procedural unconscionability focusses on "oppression" and "surprise." *A & M Produce*, 135 Cal. App. 3d at 486. A finding of oppression is appropriate when there is an "inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice.'" *Id.* (quoting *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965)). "'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.*

The Court finds that the CBA is not procedurally unconscionable. First, the agreement is not oppressive. Plaintiff's argument that he "had no bargaining power" is unpersuasive. The Union and the RCA negotiated and signed both the Labor Agreement and the MOU. Wilson Decl. ¶ 3–4. These parties occupy equal bargaining positions. Indeed, as Defendants point out, "[o]ne of the primary purposes of allowing collective bargaining is to equalize the bargaining power of employees with that of employers." Reply at 7 (citing 29 U.S.C. § 151; *Cal. Grocers Assn. v. City of Los Angeles*, 52 Cal. 4th 177, 195 (2011) (finding Congress enacted the National Labor Relations Act to remedy the inequality of bargaining power between employees and employers)).

Similarly, Plaintiff's argument that he did not have a "meaningful choice to refuse to accept Defendant[s'] adhesive CBA" is equally unpersuasive. Plaintiff's Union negotiated the CBA on behalf of its members, including Plaintiff. And Plaintiff brings forth no evidence that the negotiation took place at anything less than arms-length. Moreover, "[w]hen bargaining power is not grossly unequal and reasonable alternatives exist, oppression typically inherent in adhesion contracts is minimal." *Roman v. Super. Ct.*, 172 Cal. App. 4th 1462, 1470 n.2 (2009) (citing *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1056 (2001) (finding contract of

1 adhesion is not dispositive on question of procedural unconscionability)). Accordingly, the Court finds no oppression.

Second, the Court finds the CBA includes no "surprise." The arbitration clause is not hidden within the CBA; it is contained in a separate section titled—in capital letters and bold font—"Grievance and Arbitration." *See* Wilson Decl., Ex. 1 at 15. The MOU is similarly conspicuous in terms of what it contains and to whom it applies. *See generally* Wilson Decl., Ex. 2. Plaintiff also clearly states that he "received a copy of [the] Memorandum of Agreement and a Residential Master Labor Agreement from the Union," FAC ¶ 9, and, thus, Plaintiff cannot complain that he never had the opportunity to review the CBA.

Having found there to be no oppression or surprise, the Court finds that the CBA was not procedurally unconscionable. Although this conclusion alone precludes a finding of unconscionability, the Court will also address Plaintiff's arguments that the CBA is substantively unconscionable.

### B. *Substantive Unconscionability*

Substantive unconscionability exists when a contract has "overly harsh or one-sided results." *Armendariz*, 24 Cal. 4th at 114 (citations and quotations omitted). Substantive unconscionability, however, "requires a substantial degree of unfairness beyond 'a simple old-fashioned bad bargain.'" *Sanchez*, 61 Cal. 4th at 912 (quoting *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1160 (2013)). Instead, only "one-sided contract provisions" that are "overly harsh," "unduly oppressive," "unreasonably favorable," or that "shock the conscience" are unconscionable. *Id.* (citing *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012)). The "ultimate issue in every case," therefore, "is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." *Id.* at 912. Relevant here, "the standard for substantive unconscionability . . . must be as rigorous and demanding for arbitration clauses as for any contract clause." *Id.*

///

Plaintiff argues that the CBA is substantively unconscionable for two reasons. First, Plaintiff claims that the CBA "unreasonably limits the statute of limitations . . . for all claims to 25 days" which is "substantially less than the statutory periods for all of Plaintiff's claims." Opp'n at 24. A full reading of the CBA, however, quickly disproves this argument. The CBA states that statutory claims must be brought "within the later of (i) the time set forth in the Procedure for Settlement of Grievance and Disputes," (i.e., 25 days), "or (ii) the time provided for under applicable statute." Wilson Decl., Ex. 2 at 2–3. Thus, the CBA incorporates the applicable statute of limitations and does not limit Plaintiff's time to bring the statutory claims in any way.

Second, Plaintiff also argues that the CBA's procedures limit workers from bringing claims other than "violations of the terms of the CBA, which would necessarily exclude the relief Plaintiff and the Class are entitled to seek under California statutory authority." Opp'n at 25. This reading of the CBA is also untenable and not supported by the language of the CBA. The CBA applies to "all employee disputes concerning violations of . . . federal, state, and local law concerning wage-hour requirements, unpaid wages, payment and meal or rest periods premiums, waiting time pay, non-compliant earnings statements, and unreimbursed expenses . . . as well as any and all other claims arising under the California Labor Code." Wilson Decl., Ex. 2 at 2. This merely states the types of claims that fall under the CBA's procedures and does not preclude Plaintiff from raising his claims in any way.

Because the CBA is neither procedurally nor substantively unconscionable, the Court finds the arbitration clause enforceable.

### IV. Plaintiff's Class and PAGA Claims

Under the FAA, "courts shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Defendants argue that the terms of the CBA only allow individualized proceedings and, thus, the Court must dismiss Plaintiff's class claims. Mot. at 11; Reply at 8–9. Plaintiff does not argue otherwise. *See generally* Opp'n. The CBA states that "[t]he arbitrator shall not have the

12

18-CV-1214 JLS (WVG)

authority to consolidate individual grievances for hearing, and does not have the authority to fashion a proceeding as a class or collective action or to award relief to a group or class of employees in one grievance or arbitration proceeding." Wilson Decl., Ex. 2 at 3. The Court determines, based on the express language of the CBA, that Plaintiff's class claims cannot move forward in arbitration. Therefore, the Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiff's class claims.

Both parties agree that Plaintiff's PAGA claims are not subject to arbitration and that the Court should stay those claims. Under the FAA and California law, if a court finds that some, but not all, claims are subject to arbitration, it may stay the claims not subject to arbitration while arbitration of the remaining claims is pending. 9 U.S.C. § 3; Cal. Civ. P. Code § 1281.2(c); *Cronus Invs., Inc. v. Concierge Servs.*, 35 Cal. 4th 376, 393 (2005). Accordingly, the Court **STAYS** Plaintiff's PAGA claims pending resolution of the arbitration of Plaintiff's individual claims.

## CONCLUSION

For the reasons stated above, the Court concludes that the arbitration clause contained in the CBA is enforceable and encompasses Plaintiff's claims pled in his FAC, with the exception of his PAGA claims. Accordingly, the Court (1) **GRANTS** Defendant's Motion to Compel Arbitration of Plaintiff's individual claims (ECF No. 6); (2) **DISMISSES** Plaintiff's class claims; and (3) **STAYS** Plaintiff's PAGA claims pending resolution of the arbitration of Plaintiff's individual claims pursuant to 9 U.S.C. § 3. The parties are **ORDERED** to file a status update on arbitration proceedings every 120 days and within 15 days of completion of the arbitration proceedings.

**IT IS SO ORDERED.**

Dated: March 22, 2019

Hon. Janis L. Sammartino
United States District Judge